## CRUTCHFIELD v. BARNETT. (No. 8647.)

(Court of Civil Appeals of Texas. Galveston. March 19, 1925.)

**1. Partition ⬅⟳4—Evidence held sufficient to sustain a finding of partition by agreement by heirs since dead.**

Evidence, in trespass to try title, consisting of remembrance of witness, recitals of deeds, and circumstances of ownership not being questioned, *held* sufficient to sustain a finding of partition under agreement by heirs, since dead.

**2. Adverse possession ⬅⟳115(3)—Possession of part inclosed held not insufficient as matter of law to give notice of claim to entire tract.**

It cannot be held as matter of law that defendant's possession, by inclosure with other lands held by him, of 40 or 50 acres of a tract claimed by plaintiff, was insufficient to give notice of adverse claim to the part of the tract outside the inclosure, regardless of the size of the inclosure or the shape of the encroachment and its relative position to defendant's other inclosed land.

Appeal from District Court, Grimes County; Carl T. Harper, Judge.

Action by J. C. Crutchfield against W. F. Barnett. Judgment for defendant, and plaintiff appeals. Affirmed.

Buffington & Leigh, of Anderson, for appellant.

H. L. Lewis and S. W. Dean, both of Navasota, for appellee.

PLEASANTS, C. J. This is a suit in trespass to try title brought by appellant against the appellee to recover title and possession of a tract of 664.23 acres of land in Grimes county patented to the heirs of William Berryman. The defendant disclaimed title as to all of the Berryman survey except a tract of 334.07 acres, described in the answer by metes and bounds, as to which he pleaded not guilty, and limitation of three, five, and ten years. The trial in the court below with a jury resulted in a verdict and judgment in favor of the defendant.

The record discloses the following facts: The 664.23-acre survey of which the land in controversy is a part was patented to the heirs of William Berryman under a special act of the Legislature of Texas, approved October 11, 1866, entitled "An act for the relief of the heirs of William Berryman." This act required the cancellation of the title to a league of land granted to William Berryman in 1834, and which had been located upon land previously granted, and in lieu thereof provided for the issuance of a certificate for a league of land to be located on any vacant public domain.

The tract of 664.23 acres here involved was located under this certificate. The patent was issued to the heirs of William Berryman on February 7, 1875. William Berryman, who was married twice, died in January, 1863, leaving a will which was duly probated, by which he devised his estate to his wife, Nancy Berryman, and her two sons, John and William Berryman. This will contains the following provision:

"It is my will and desire that if at the time of my death I should be possessed of or own any other property or effects, remainders or services other than that above specified, or over and above what may be necessary for the payment of my just debts, that the same go to and be equally divided between my two sons, William and John Berryman, at my death."

He was survived by his wife, Nancy, who was his second wife, his sons John and William, and a daughter Susan, who were children of his wife Nancy, and by a son Wesley Berryman, and two daughters Sarah McIntyre and Patsy Grimes, children of his first wife. The daughter Susan died many years ago leaving a son, W. T. Schumacher, as her sole heir.

Plaintiff claims title to the land in controversy under deeds from William Berryman,

W. T. Schumacher, and Henry F. Grimes, a son of Patsy Grimes, executed in 1913, conveying all of the grantors' "undivided right, title, interest, claim and demand not previously sold" by them to which they were entitled as heirs of William Berryman, deceased, to lands wherever situated in the state of Texas, and especially in and to the survey in Grimes county, patented to the heirs of William Berryman.

Patsy Grimes and her husband, Rufus Grimes, by deed of date August 17, 1875, as "legatees and heirs at law of the estate of William Berryman, deceased," conveyed all of their interest in the William Berryman survey in Grimes county to Sarah McIntyre and husband, Robert McIntyre, and Wesley Berryman. This deed described the land thereby conveyed as 266½ acres out of the southeast corner of the survey which had been theretofore conveyed to the grantors by the grantees.

Robert McIntyre and Sarah McIntyre, by deed of date April 3d, 1875, conveyed to Wesley Berryman 160½ acres of said survey.

Robert McIntyre and wife conveyed 293½ acres of said Berryman survey to their son Edward McIntyre by deed of date September 18, 1880, which recites that it is executed in lieu of a former deed executed by them to their said son. This deed also recited that the land thereby conveyed is all of said survey except a tract of 160½ acres previously conveyed by the grantors to Wesley Berryman and is "a portion of the land conveyed to us as heirs at law and legatees of the estate of William Berryman, deceased, by the remaining heirs at law of said estate by deed of conveyance duly authenticated by said heirs and legatees."

On August 30, 1881, Edward McIntyre conveyed to Simon Levy 300 acres of the Berryman survey and being all that part of the 493½ acres out of said tract theretofore conveyed to the grantor by Robert and Sarah McIntyre on September 18, 1880, except 193½ acres which the grantor had previously sold to one Loftin.

Simon Levy by deed of date June 30, 1883, conveyed this 300 acres to Mrs. Cornelia N. Davis. Mrs. Davis, joined by her husband, J. W. H. Davis, by deed of date February 16, 1917, conveyed to appellee Barnett by metes and bounds 344.7 acres of the Berryman survey. This deed recited that this 344 acres "includes 16 acres out of the G. G. Loftin 191 tract after selling 175 acres of said tract to C. W. Perry."

Mrs. Rebecca McDougald, a daughter of Wesley Berryman, testified in substance that there was a partition of the land belonging to the estate of her grandfather, William Berryman, many years ago when she was a child, between the heirs of William Berryman, and a partition deed or deeds were executed which had been lost, and that in that partition Sarah McIntyre was awarded land in the William Berryman survey in Harris county and the other heirs took their lands elsewhere, and that John and William Berryman and Susan Schumacher got their lands in Anderson county. On cross-examination, however, this witness testified:

"I do not remember whether partition was oral or written, but deeds were executed.

"Q. State whether William Berryman, Jr., received lands in this partition as his part of the estate and where the same was located. A. William Berryman, Jr., did not receive any land from this partition, and as to John Berryman, he did not receive any either."

The witness further stated, in answer to an inquiry about William, John, and Nancy Berryman and Susan Schumacher:

"I do not remember if these persons were present and I do not know what was said, but I do know that it was agreeable at the time."

Asked as to the land in controversy, whether William or John Berryman or Susan Schumacher ever claimed the land, she stated:

"They never did claim it. They got their part of the land at Anderson."

In answer to cross-interrogatories, she answered that she did not know whether John and William Berryman were ever present at a partition; that they were left out of the partition, but that "they got their part of the land at Anderson."

The undisputed evidence shows that none of the heirs under whom appellant claims ever asserted a claim to any portion of the land in controversy prior to the execution of the deeds under which appellee claims title.

In 1900 appellee took possession of a portion of this land. He thought when he went upon and fenced the land that it was Perry's land, and had permission from Mr. Perry to fence it; not knowing the lines, he included in his inclosure 40 or 50 acres of the Davis land. Some time in the year 1906, he was told by Oscar Davis, a son of J. W. H. and Mrs. Cornelia Davis, that a portion of the land in his inclosure belonged to his father. He then agreed with young Davis to hold the land for his father and to look after and protect the remainder of the tract. After making this agreement, he extended his fences and inclosed more of the Davis land. He held possession of the land for Davis, kept up the fences, and used the land as a pasture continuously until 1914, when the whole of the Davis tract was rented to Will Smith, who fenced and held possession of the whole tract until appellee purchased it from Davis in 1917, as before shown. All taxes on the land were paid by Mrs. Davis as they became due after her purchase of the land.

In response to special issues submitted to them by the court, the jury found: That

there was a partition of the lands belonging to William Berryman, deceased, whereby John Berryman, William Berryman, Jr., and Susan Schumacher received their lands in other surveys than the survey involved in this suit; that appellee and those under whom he claims had held peaceable and adverse possession of the land in controversy, cultivating, using, and enjoying and claiming title under deeds duly recorded, and paying all taxes accruing thereon for more than five years before this suit was filed; and further found that appellee and those under whom he claims had held peaceable and adverse possession of the land in controversy under deeds duly recorded, cultivating, using, and enjoying the same for more than ten years prior to the filing of this suit.

[1] We think the evidence before set out is sufficient to sustain the finding of the jury upon the issue of an agreed partition. It was the province of the jury to reconcile the apparently contradictory statements in the testimony of Mrs. McDougald, and they might have accepted as true one of the statements and rejected the other, or they might have concluded that her testimony was not necessarily contradictory. If, however, her testimony be entirely disregarded, we think the recitals in the deeds before set out and the fact that the McIntyres and their vendees have claimed this land and have exercised acts of ownership thereover for 50 years, and their ownership was never questioned by any of the other heirs of William Berryman, who knew of their claim and active assertion of ownership, justifies the conclusion that there was an agreed partition of the lands. All of the heirs of William Berryman are dead, and the fact that there was a partition and a deed of partition executed which has been lost cannot be directly established by any of the parties to the agreement, and appellee is compelled to rely upon circumstances to show that such partition was made.

We think the existence of such agreement is a fair inference from all the circumstances before set out, and that the jury was authorized to so find.

[2] Upon the issue of limitation, the verdict of the jury is supported by the great weight and preponderance of the evidence.

Appellants in their brief do not question the sufficiency of the evidence to sustain the verdict upon the issue of limitation as to the portion of the Davis land within Barnett's inclosure, but insists that possession by Barnett of the portion inclosed was not sufficient to give notice to the owner of the land of an adverse claim to the whole tract.

We cannot agree with appellants in this contention. No such issue was submitted to the jury or requested to be submitted, and to sustain appellant's contention would be to hold as a matter of law that appellee's possession of 40 or 50 acres of the land claimed by appellant, which was inclosed with other lands held by appellee, was insufficient to give notice of his adverse claim regardless of the size of the inclosure or the shape of the encroachment and its relative position to the appellee's other inclosed land. Such holding would be clearly unsound and directly in conflict with the holding of our Supreme Court. Smith v. Jones, 103 Tex. 632, 132 S. W. 469, 31 L. R. A. (N. S.) 153.

It would serve no useful purpose to discuss all of the various propositions presented in appellant's brief, all of which we have duly considered. Our conclusions upon the issues we have discussed require an affirmance of the judgment, and it has been so ordered.

Affirmed.